OPINION OF THE COURT
Per Curiam.
Orders, dated June 19, 2014 and September 8, 2014, modified, on the law, to the extent of reinstating the charge of selling alcoholic beverages without a license; as modified, orders affirmed.
The count of the accusatory instrument charging defendant with selling alcoholic beverages without a license (see Alcoholic Beverage Control Law § 100 [1]) was not jurisdictionally defective. The information — comprised of the misdemeanor complaint and the supporting deposition of an undercover officer — alleged, inter alia, that on November 16, 2013, at 1:45 a.m., inside the basement of a private residential home, the deponent observed “a DJ booth and a bar area, which defend *93 ant was standing behind”; that defendant had in his “custody and control” three boxes, one containing 12 Heineken beers, one containing 12 Negra Modelo beers, and one containing 12 Corona beers; that deponent “handed defendant six dollars . . . in exchange for two beers”; and that a New York State liquor license was not conspicuously posted. These factual allegations, “given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]), were sufficient for pleading purposes, to establish reasonable cause to believe and a prima facie case that defendant committed the crime of selling alcoholic beverages without a licence (see Alcoholic Beverage Control Law § 100 [1]).
Contrary to the conclusion reached below, the Alcoholic Beverage Control Law does not exempt from its reach the sale of alcohol in a private residence. Subdivision (1) of section 100 of the Alcoholic Beverage Control Law forbids a sale by any “person” of any alcoholic beverage without obtaining a license; section 3 (22) defines “person” to include an individual; and section 3 (28) defines “sale” as “any transfer, exchange or barter in any manner or by any means whatsoever for a consideration.” This language is broad enough to encompass the sale of alcohol in a private residence. Indeed, the policies and regulations established by the legislature in enacting the Alcoholic Beverage Control Law — including, inter alia, to regulate the sale and distribution of alcoholic beverages within the state “for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law . . . [and] for the primary purpose of promoting the health, welfare and safety of the people of the state” (Alcoholic Beverage Control Law § 2) — would quickly become meaningless if the requirements of the law could be avoided by simply selling alcoholic beverages from a private residence (see generally People v Hardy, 47 NY2d 500, 504 [1979]).
However, we agree with defendant that the count of the accusatory instrument charging him with illegal storage of alcoholic beverages (see Alcoholic Beverage Control Law § 96 [1]) was jurisdictionally defective. Section 96 prohibits, without a license or permit, the storing or keeping of alcoholic beverages for sale or distribution (see People v Rolle, 44 NY2d 743, 744-745 [1978]). Here, the mere allegations that defendant had in his “custody and control” three boxes of beer were insufficient to demonstrate reasonable cause to believe and a prima facie case that defendant “stored or kept” alcoholic beverages within the meaning of the law.
*94 Although the words “stored or kept” are not defined in the statute, the dictionary definitions of these words (see McKinney’s Cons Laws of NY, Book 1, Statutes § 234) emphasize the act of putting something away for future use and keeping (see Black’s Law Dictionary 1556 [9th ed 2009] [“store, vb. . . . To keep (goods, etc.) in safekeeping for future delivery in an unchanged condition”]; Webster’s New Collegiate Dictionary [1981] [accord]). Consistent therewith, a warehouse is defined in the Alcoholic Beverage Control Law as “including] a place in which alcoholic beverages are housed or stored” (§ 3 [38]), and the stated legislative purpose of section 96, titled “Warehouse permit,” was to regulate “warehousing of alcoholic beverages,” since warehousing encourages “retailer-to-retailer” sales — activities which “lead to the evasion of excise, sales and income taxes, as well as impeding the efficient administration of the New York state returnable container act” (L 1995, ch 545, § 1). Thus, in light of the dictionary definition of the words and the declaration of legislative intent, we conclude that in utilizing the words “stored or kept,” the legislature intended to set a threshold of something more than mere possession of alcoholic beverages for the purpose of sale. Since it is not reasonably inferable from the facts alleged in the accusatory instrument that defendant acted as a “warehouse,” or that he “stored or kept” alcoholic beverages for future distribution or sale, the count of the accusatory instrument charging him with storing alcoholic beverages without a permit is jurisdictionally defective.
Lowe, III, P.J., Schoenfeld and Shulman, JJ., concur.